UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT ANDERSON,

    Petitioner,

v.

LLOYD RAPELJE,

    Respondent.

CASE NO. 2:11-14825
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Albert Anderson, ("petitioner"), confined at the Saginaw Correctional Facility in Freeland, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for unarmed robbery, M.C.L.A. 750.530; assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

1

This case arose out of events that occurred on January 13, 2009. Laura Sims, then 81 years old, lived with her son on Pennsylvania Avenue in Detroit, Michigan. Sims had lived there for more than 40 years. Sims testified that she and Anderson used to live on the same street and that Sims' children and Anderson had often played together as children.

At some point, Sims' son left their home, leaving Sims alone in the house. Sims testified that she was upstairs in her bedroom when she heard knocking on a window and then the doorbell ring. Sims opened her door, revealing Anderson on her porch. She then let him into her home.

Sims testified that Anderson asked if her son was home, but she told him that her son had left to pick up his children. Sims testified that Anderson then stated that he needed some water because he had been working down the street. Anderson went into the kitchen and soon returned to where Sims was seated. Anderson then asked Sims if he could use the bathroom, and Sims gave him her permission. The bathroom was located on the second floor of the home.

Sims stated that Anderson was upstairs for an unusually long amount of time. So, she went upstairs to investigate. Sims found Anderson "standing in the bathroom door with his britches opened." Anderson then asked Sims if she had any money. Sims ignored the question and turned to leave. Anderson followed Sims, grabbed her arms, pulled her toward him, and said, "I asked you do you got any money." He then pushed her into her son's bedroom, knocking her into a dresser, and causing her to fall to the floor.

Sims testified that once she was on the floor, Anderson began kicking and stomping her, and he told her to "go into that closet and get that black pocket book out and some money." Sims stated that she did not have any money, to which Anderson responded, "You better have some money because that is what I want." Anderson continued kicking Sims, and she continued to state that she did not have any money. Eventually, Sims lost consciousness. After the incident, Sims awoke and found that her jewelry box had been moved from a dresser drawer in her bedroom to the bed in her son's room. The jewelry, along with two watches from her son's room, and a video gaming system were all missing.

When Sims awoke, she called her daughter, Alice Parham. Parham testified that her mother called her around 2:45 p.m. and stated that "Albert came to my house, he beat me up and he stole my jewelry." Parham, Sims' son, and other family members went to the house; the police were already there. Parham gave police information about where to locate Anderson. Police went to Anderson's house and arrested him.

Anderson testified that he never went to Sims' house that day and that he had not

2

seen Sims for decades.

William Hart, a Detroit police officer, testified that he responded to Sims' house on January 13. He spoke to Sims, who had "sustained a pretty good beating" and "was in distress." Sims told him that Anderson and another man came to her door.

*People v. Anderson,* No. 296732, * 1-2 (Mich.Ct.App. April 26, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 490 Mich. 861;801 N.W.2d 884 (2011).

Petitioner seeks habeas relief on the following ground:

Was the petitioner denied his constitutional right to due process of the law when the trial court failed to swear in the jury after 14 jurors had been selected to hear the petitioner's case.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*,

4

131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

### III. DISCUSSION

Petitioner claims that he was denied his constitutional right to a fair trial when the trial judge allegedly failed to administer an oath to the jurors who served in his case at the beginning of petitioner's trial.

Respondent contends that petitioner's claim is procedurally defaulted because petitioner failed to object to the alleged failure of the trial court to administer an oath to the jurors. Petitioner, however, contends that trial counsel was ineffective for failing to object to the trial court's failure to swear in the jurors and further alleges that appellate counsel was ineffective for

5

failing to raise the issue of trial counsel's alleged ineffectiveness on petitioner's direct appeal to overcome the procedural bar for his unpreserved claim. This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The Michigan Court of Appeals, in their recitation of the facts, made the following factual findings, which are presumed correct on habeas review:

> Jury selection began, and the venire was "sworn as to qualifications." After a jury was selected, the court provided some preliminary instructions. According to the transcript, jury selection began at 10:20 a.m. and concluded at 11:30 a.m. There is no mention of the jury being sworn. However, a work sheet in the file detailing the trial proceedings contains the following notations:
>
> Jan 05 2010—1030 AM Voir Dire Began. 1130 AM Jury Panel sworn by clerk....
>
> Jan 06 2010
>
> Jury heretofore having been duly impaneled and sworn, and having heard all of the testimony and arguments of counsel, hear the charge of the court and retire in charge of an officer, duly sworn to attend them, at 12:20 p.m. and then return at 100 p.m.

and say in the presence of the court that they find the defendant guilty of unarmed robbery statute sec. 750.530 guilty of AWIGBH statute sec. 750.84.

*Anderson,* Slip. Op. at * 4.

The Michigan Court of Appeals subsequently rejected petitioner's claim:

The trial transcript shows that the prospective jurors were sworn, but it does not show that the impaneled jurors were sworn. However, a clerk's work sheet in the file that details the trial proceedings states in part "Jan 05 2010—1030 AM Voir Dire Began. 1130 AM Jury Panel sworn by clerk...." This work sheet, which is part of the record, is sufficient to show that the jury was properly sworn. Because the record indicates that the jury was properly sworn, Anderson cannot show plain error.

*Anderson,* Slip. Op. at * 5 (internal footnote omitted).

As an initial matter, petitioner has offered this Court no evidence to establish that the jurors in his case were not properly sworn at the start of his trial. Although there is nothing in the transcripts to indicate that the jurors were sworn, the court clerk's work sheet contains a notation that the jury panel had been sworn in prior to the beginning of trial. Under Michigan law, a clerk of the court's notes that indicate that a jury was sworn in are sufficient to establish that the jury was properly sworn, despite the absence of such a notation to that effect in the trial transcripts. *See People v. Jackson,* 100 Mich. App. 146, 153-54; 298 N.W. 2d 694 (1980); *People v. Livingston,* 57 Mich.App. 726, 734; 226 N.W. 2d 704 (1975), *modified on other grds* 396 Mich. 818, 238 N.W.2d 360 (1976). Federal courts have likewise held that the mere absence of an affirmative statement in the trial court record is insufficient to establish that the jury was not sworn prior to trial. *See U.S. v. Pinero,* 948 F.2d 698, 700 (11th Cir. 1991). Petitioner would not be entitled to habeas relief on his claim because he has offered this Court no affidavits from his attorney, the court reporter, or any other persons who were present in the courtroom during his trial to support his allegation that the jury was never given its oath. *Id.*

7

Moreover, assuming that the jurors were not sworn in, petitioner would not be entitled to habeas relief. As respondent indicates in his answer, and petitioner concedes as much in his reply, there is no Supreme Court precedent which establishes a federal constitutional right that requires a state trial court to administer an oath to an empaneled jury. *See Baldwin v. State of Kansas,* 129 U.S. 52, 56; 9 S. Ct. 193; 32 L. Ed. 640 (1889)(finding no federal issue in the allegedly improper swearing of a state court jury); *Rodriguez v. Brown,* No. 2011 WL 4073748, * 9-10 (E.D.N.Y. September 13, 2011)(habeas petitioner not entitled to habeas relief on claim jurors not properly sworn in at his state court trial, because "there is no Supreme Court mandate regarding the proper method of administering an oath to a jury"); *Pinkney v. Senkowski*, No. 2006 WL 3208595, *6 (S.D.N.Y. November 3, 2006)(holding that even if petitioner established that the jurors in his state court criminal case had not been properly sworn in, he would not be entitled to habeas relief because "the writ may be granted only to remedy a violation of federal law"); *Spearman v. Birkett*, No. 2006 WL 6032120, * 11 (E.D. Mich. March 31, 2006)(petitioner not entitled to habeas relief based on the jury being given a defective oath in his state court prosecution, in the absence of any federal caselaw which requires that "a particular form of oath be sworn to by the jurors as a matter of federal constitutional law"). Given the lack of holdings by the Supreme Court on the issue of whether a state trial court is required to administer an oath to an empaneled jury, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006). Petitioner is not entitled to habeas relief on his claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

8

certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claim to be debatable or wrong. *Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

IV.   **CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis.*

**SO ORDERED.**

DATED: 7-9-12

PAUL D. BORMAN
UNITED STATES DISTRICT COURT